# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DREW R. FLYNT,
    Plaintiff,

v.                                                                    CIV No. 99-911 JC/KBM

TCI CABLEVISION OF NEW MEXICO,
INC., a New Mexico corporation,
d/b/a TCI MEDIA SERVICES,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendant's Motion for Summary Judgment, filed October 19, 2001 *(Doc. 70)*. The Court has reviewed the motion, memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds the motion well taken and, therefore, granted.

## I. Background[1]

There are few facts in this case not in dispute. Drew R. Flynt brings this action against TCI Cablevision under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.,* claiming wrongful termination. Plaintiff alleges that his termination was not due to the poor performance that Defendant claims but, instead, due to his age, as he was 51 at the time. Defendant acquired Plaintiff as an employee in 1996 when it purchased Western Communications in Las Cruces, New Mexico. At that time, Plaintiff had over 20 years of experience as a sales manager and more than

---

[1] Plaintiff submitted two sets of depositions. Plaintiff, however, failed to numerically differentiate between the two. The Court, thus, refers to the originals as Pl's Exhibit 1... and Pl's Exhibit 2....

-1-

10 years experience in the cable industry. *See* Defendant's Memorandum in Support of Summary Judgment (Df's Memo), filed October 19, 2001, 4 (*Doc. 71*). Until his termination in December 1997, Defendant employed Plaintiff as a General Sales Manager ("GSM"). At all pertinent times, Derek Mattsson was Plaintiff's supervisor.

As part of his duties, Plaintiff was responsible for creating the budget for Las Cruces.[2] Defendant contends that Plaintiff underperformed his budget expectations for three consecutive years. Plaintiff asserts, however, that Defendant has, at the least, misinterpreted the sales figures for Las Cruces, and at the worst, falsified them to make Plaintiff's performance look poorer than it actually was. *See* Plaintiff's Resubmitted Memorandum Brief in Support of his Response to Defendant's Motion for Summary Judgment (Pl's Response), filed January 10, 2002, 23 (*Doc. 95*).

In support of his theory, Plaintiff alleges that three employees, Kurt Kennedy, James Bracken and Paul Wilhelm, were similarly situated, yet treated differently by Defendant. Kurt Kennedy was area manager from 1991 until late 1996 when the company assigned him to the Denver area. *See* Df's Exhibit G, 5:14-18, 65:1-4. Shortly thereafter, Mr. Kennedy applied for and obtained the position of local sales manager for the Denver area, a position he still held at the time of his deposition. *See* Df's Exhibit G, 69:4-15. Mr. Kennedy obtained this position after he learned that the New Mexico markets were going to be sold. He wished to stay with TCI and made this desire known to Derek Mattsson, who then obtained for him the assignment in Denver. While in New Mexico, Mr. Kennedy's direct supervisor was Derek Mattsson, *see* Pl's Exhibit 2,3:78:5-18, but it is unclear from the deposition testimony who became Mr. Kennedy's supervisor after he moved to Denver. Plaintiff reported

---

[2]Plaintiff claims that Mr. Kennedy helped prepare the budget. The deposition testimony cited to by Plaintiff, however, indicates that his supervisor, Mr. Kennedy, solely aided Plaintiff in formulating realistic budget goals, not preparing the budget. *See* Pl's Exhibit 1,1:189:13-18.

directly to Mr. Kennedy prior to his move to Denver. Mr. Kennedy was 32 years old when TCI fired Plaintiff.

Defendant hired James Bracken as GSM of Santa Fe and Farmington to replace Kurt Kennedy. As GSM, his direct supervisor was Derek Mattsson. *See* Df's Exhibit J, 18:18-19. Prior to the GSM position, Mr. Bracken was an account executive in Santa Fe for over two years. *See* Df's Exhibit J, 6:6-12. Plaintiff and Mr. Bracken agree that his performance while in Santa Fe was less than satisfactory, yet he never received any corrective disciplinary memoranda. *See* Pl's Response at 20; Df's Memo at 12. Because Mr. Bracken was unsatisfied with his performance in Santa Fe he expressed an interest in, and then obtained, the job of local sales manager in Colorado, where he currently holds the same position. *See* Df's Exhibit J, 5:16-23. At the time of Plaintiff's termination, Mr. Bracken was forty years of age, and his direct supervisor was Dan Kuntz. *See* Pl's Response at 20, Pl's Exhibit 1, 10.

Paul Wilhelm is the third person Flynt points to as someone who was similarly situated at the time of his termination, yet was treated differently by Defendant. Mr. Wilhelm had no background or experience in the cable industry or in management when he began as the GSM in TCI's Casper, Wyoming office. *See* Df's Memo at 12. When TCI eliminated the GSM position in Casper, Mr. Wilhelm assumed the position of Area Sales Manager in Rapid City, South Dakota, where his supervisor was Dale Christiansen. *See* Df's Exhibit I, 8:1-10. Mr. Wilhelm was only in Rapid City for 75 days before Mr. Christiansen told him to return to Casper and assume the position of Senior Account Executive. *See* Df's Exhibit I, 17:15-23, 19:19-20. Six months after returning to Casper, Mr. Christiansen fired Mr. Wilhelm. Derek Mattsson was Mr. Wilhelm's supervisor when he first was in Casper, but it seems that upon Mr. Wilhelm's return to Casper, Dale Christiansen became Mr.

Wilhelm's supervisor, as it was he who fired Mr. Wilhelm. *See* Df's Exhibit I, 45:1-4. Although neither side states specifically Mr. Wilhelm's age, it seems undisputed that he was younger than Plaintiff.

As a result of these facts, Plaintiff claims that TCI wrongfully terminated his employment due to his age.

**II.     Standard of Review**

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *See id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *See Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *See Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). An issue is material only if its resolution could affect the outcome of the action. *See Anderson*, 477 U.S. at 248. Unsupported allegations, conclusory in

nature, are insufficient to defeat a proper motion for summary judgment. *See id.*. The standard for granting a summary judgment is the same as the standard for a directed verdict. *See Celotex Corp.*, 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *See Matsushita*, 475 U.S. at 597.

### III. <u>Discussion</u>

The ADEA makes it "unlawful for an employer...to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Under this statute, a plaintiff must show that his age had a determinative impact on the employer's decision to fire him. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000). Although the Supreme Court has never squarely addressed whether the famous test regarding Title VII cases, as outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to ADEA cases, in *Reeves* the Court assumed, *arguendo,* that the test applied, as neither party disputed the issue. *See* 530 U.S. at 142. Since both parties in this case use the *McDonnell Douglas* test, this Court, too, shall assume that it applies.

The *McDonnell Douglas* test involves a three-step burden shifting analysis. First, Plaintiff must establish a *prima facia* case of discrimination. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997). To establish his prima facia case, Plaintiff must show that (1) he is a member of a protected class, (2) that he was otherwise qualified for the position of GSM, (3) he was discharged by Defendant, and (4) the position was not eliminated. *See Reeves,* 530 U.S. at 142. The burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. *See id.* This burden is one of production, not persuasion and cannot involve any

"credibility assessment." *See id*. Finally, upon Defendant's successful articulation for the termination, the burden shifts back to Plaintiff to prove, by a preponderance of the evidence, that the reasons proffered by Defendant were a pretext for discrimination. *See id*.

This Court will assume, without deciding, that Plaintiff established his *prima facia* case against TCI. *See Shorter v. ICG Holdings, Inc.,* 188 F.3d 1204, 1208 (10th Cir. 1999). The next consideration, therefore, is whether Defendant offered a facially non-discriminatory reason for Plaintiff's termination. Defendant's proffered reason for firing Plaintiff is due to his inability to perform his job up to company standards. *See* Df's Memo at 15; Df's Exhibit B-1, termination letter ("My [Derek Mattsson's] decision is based on performance issues in three basic areas: revenue generation, financial performance and employee recruitment."). In support of these reasons, Defendant offers extensive evidence and deposition testimony regarding Plaintiff's performance. For example, Derek Mattsson, Plaintiff's supervisor, testified that Plaintiff was responsible for the Las Cruces budget in 1996 and in 1997. *See* Df's Exhibit D, 16:3-5. Yet, under his tenure, both years resulted in a negative growth rate. *See* Df's Exhibit D, 33:2-7. Mr. Mattsson, also, testified that every time he visited Las Cruces members of Plaintiff's staff would approach him with concerns regarding Flynt. *See id.* at 33:9-12.

As further support for Plaintiff's termination, Defendant offers a memo to Flynt from Kerry Lehtinen and Sally Archer, both of whom were responsible for staff training. The memo outlined the company's concerns about Plaintiff's performance. *See* Df's Exhibit B-1.[3] In deposition testimony, Sally Archer stated that Plaintiff had struggled to meet his budget. *See* Df's Exhibit F, 23:7-9,

---

[3] Although the memo's date is blank, from its contents, the Court can assume that the authors wrote it in 1997.

24:16-20.

This evidence satisfies TCI's burden to provide a legitimate, nondiscriminatory reason for its decision to fire Plaintiff. To overcome the summary judgment hurdle, Plaintiff thus must demonstrate that Defendant's reasons were a mere pretext for discrimination. *See Shorter* 188 F.3d at 1209.

The Tenth Circuit has recognized that a plaintiff may establish pretext by various means. *See Kendrick v. Penske Transportation Services,* 220 F.3d 1220, 1230 (2000). Specifically, the Tenth Circuit outlined three nonexclusive ways a plaintiff may establish pretext: (1) with evidence that defendant's stated reasons were false; (2) with evidence that defendant acted contrary to written company policy defining defendant's actions when terminating an employee; or (3) with evidence that defendant acted contrary to an unwritten company policy or contrary to company practice when making the adverse employment action. *See id.* For a plaintiff to articulate that the company acted contrary to an unwritten policy or to company practice, he may offer evidence that similarly situated employees were treated differently when they violated similar work rules of comparable seriousness. *See id.*

a.  Plaintiff's claim of false reasoning by Defendant

Plaintiff seems to argue that Defendant provided false financial information to the EEOC in order to make Plaintiff's performance look worse than it truly was. *See* Pl's Response at 23. After reviewing the exhibits and deposition testimony, however, the Court does not find any connection between the alleged inconsistencies of the financial information and Plaintiff's termination. Pretext may be demonstrated by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act

for the asserted nondiscriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.). "Mere conjecture," however, "that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Id.* In this case, Derek Mattsson stated in his deposition that he was asked to get "a bunch of numbers by markets," after Plaintiff filed his complaint with the EEOC. *See* Pl's Exhibit 2, 1: 161:3; 161:7-9. In response, he asked another person to gather that information. Yet, there is nothing in the deposition testimony suggesting that Mr. Mattsson purposely falsified the information. The testimony solely reveals that Mr. Mattsson failed to review the numbers to see whether they were accurate. *See id*. at 162:1-6. Plaintiff's assertion is thus pure conjecture, as he fails to connect Mr. Mattsson's numbers to any discriminatory motive for firing him.

Presumably tied into the figures for the EEOC, Plaintiff further tries to prove that Defendant acted with false intentions by arguing that the company's financial figures became skewed due to reorganization. In 1996, southeastern New Mexico's financial figures were reported in the Santa Fe ledgers. *See* Pl's Response at 24. Then, in 1997, all management responsibilities for southeastern New Mexico were transferred to Plaintiff, yet neither the budget nor the actual results were transferred to the Las Cruces profit and loss statements. *See id.* As a result, Plaintiff argues that his financial figures look worse than they actually were. Tellingly, however, Plaintiff offers no evidence that this market actually prospered during his tenure beyond his statement that due to this change, he "did not receive the benefit of their [Las Cruces'] outstanding results." *See id.* In these accusations, Plaintiff fails to recognize that "it is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." *See Furr v. Seagate Technology*, 82 F.3d 980, 988 (10th Cir. 1996). Plaintiff, thus, fails to demonstrate to the Court that Defendant's

stated reasons for firing him are false.

Finally, Plaintiff claims that Defendant changed its position regarding whether or not Derek Mattsson offered him another opportunity in the company. *See* Pl's Response at 28. After reviewing the deposition testimony and exhibits, the Court concludes that Mr. Mattsson did not originally consider him for another position. Yet, upon Plaintiff's inquiry regarding a transfer at his exit interview, Mr. Mattsson suggested to him a position as a local account executive but did not offer him another position in sales management. Mr. Mattsson reasoned that "[a]fter two-and-a-half years of terrible sales performance, I didn't think it would be appropriate to offer him a sales management position." *See* Pl's Exhibit 2,1:90:1-21. Plaintiff refused the demotion. His argument, therefore, is not well taken, as the Court finds no evidence that Defendant (Derek Mattsson) changed his position with regard to offering Plaintiff another opportunity in TCI. Furthermore, it is not the Court's responsibility to second guess employment decisions without evidence of impermissible motive. *See Furr*, 82 F.3d at 986.

b. <u>Plaintiff's claim that Defendant acted contrary to written company policy</u>

Plaintiff attempts to argue that Defendant acted contrary to written company policy, asserting that Defendant failed to follow the Supervisor's Guide to Recruitment and Employment Practices (the Guide). In so arguing, Plaintiff seems to claim that because Defendant cannot produce various job applicant files for individuals whom he believes are similarly situated to him, Defendant's stated reasons for terminating him are pretextual. *See* Pl's Response at 26-27. Plaintiff's contention, however, is misplaced, as the Guide specifically states in large bold-faced font that:

> *This Guide does not set forth Company policy*. It is only a guideline for supervisors regarding their relationships with Company employees. The advise set forth in this Guide may be deviated from at

any time.

Df's Exhibit M (emphasis added). Such explicitly clear language should end the discussion regarding the Guide. The Guide, however, goes on to specifically state that, "the job applicant file is a file that you are *required* to maintain at your offices for five years after the position has been filled." *See* Pl's Exhibit 1,17: 5-2 (emphasis added). This language is not advisory, but mandatory and thus suggestive of an official policy. Plaintiff's argument still fails, however, for

> [t]he mere fact that an employer failed to follow its own internal *procedures* does not necessarily suggest that the employer was motivated by illegal or discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual.

*Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995) (internal citations omitted). In this case, Plaintiff does not provide any evidence that Defendant's failure to produce these files is the result of a discriminatory intent against him. He simply seems to argue that such failure to follow the Guide is evidence of pretext. Yet, this inconsistency "goes *process* not to purpose or motivation."[4] *Id.*

c.  <u>Plaintiff's claim that he was not treated like similarly situated employees</u>

Plaintiff's final pretextual argument asserts that he was not treated in the same manner as similarly situated non-protected employees. A similarly situated employee is one who has the same supervisor and is subject to the same performance guidelines. *See Kendrick*, 220 F.3d at 1232. Moreover, a court should compare "the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees...." *Id.* In this instance, Plaintiff points to three employees he alleges are similarly situated to him but received

---

[4]For an example of pretext due to failure to follow company policy *see Lucy v. Manville Sales Corp., 674 F. Supp. 1426, 1427 (D.Colo. 1987)*. (Contrary to company policy, defendant refused to interview qualified black applicants even though it interviewed qualified white applicants.)

different treatment when they failed to meet company standards.

Kurt Kennedy

Kurt Kennedy was Area Sales Manager for New Mexico from 1991 to 1996, *see* Pl's Response at 18, until he transferred to Denver and obtained a position as Local Sales Manager. *See* Df's Exhibit G, 69:4-12. This position he continues to hold today. Plaintiff asserts that "Mr. Kennedy's revenue performance in Santa Fe for 1996 was down $138,227.14, and his revenue performance in Farmington was down by $269,736.66 while Plaintiff's revenue performance in Las Cruces... was down $102,986.49." *See* Pl's Response at 18-19. Yet, instead of being fired, Plaintiff seems to argue that Defendant ignored the numbers and even allowed Mr. Kennedy to transfer positions. *See id.*

Plaintiff's argument fails for two reasons. First, Plaintiff and Mr. Kennedy had different work histories and held different positions. *See* Df's Memo at 17. In fact, prior to Plaintiff's termination, Mr. Kennedy was Plaintiff's supervisor. *See* Pl's Exhibit1, 3:115:24-25; Pl's Response at 4. Then, at the time of Plaintiff's termination, Mr. Kennedy had already transferred to Denver and become Local Sales Manager. At no time, therefore, did Mr. Kennedy and Plaintiff hold the same position. Second, although Mr. Kennedy failed to meet his 1996 budget, his uncontradicted testimony states that he met it every other year, *see* Pl's Exhibit1, 3:3:3-7; whereas Plaintiff cannot make any such assertions about his financial performance.

Plaintiff next seems to argue that Mr. Kennedy's move to Denver and Defendant's inability to find his job applicant file is evidence of pretext. Yet, as stated herein, Defendant's failure to

produce job applicant files is not evidence of pretext.[5] *See Randle*, 69 F.3d at 454. For these reasons, Plaintiff cannot compare himself to Mr. Kennedy.

James Bracken

James Bracken replaced Kurt Kennedy as Area Sales Manager in Santa Fe.[6] *See* Pl's Response at 20. While in Santa Fe, Derek Mattsson was Mr. Bracken's direct supervisor. In deposition testimony, Mr. Bracken attests that his performance in Santa Fe "stunk." *See* Pl's Exhibit 1, 9:114:4-5. Unlike Plaintiff, however, Mr. Bracken sought another position within the company, and thus, in mid-1997, transferred into the position of Local Sales Manager in Colorado.[7] *See generally* Df's Exhibit J, 87-90. Upon his move to Colorado, Dan Kuntz became Mr. Bracken's direct supervisor. According to Defendant, Mr. Bracken is continuing to perform well in that position. *See* Df's Memo at 12.

Once again, Plaintiff does not specifically state how he and Mr. Bracken are similarly situated, as they did not even have the same supervisor at the time of Plaintiff's termination. Furthermore, they never seemed to hold the same position, so their duties were not the same. Plaintiff's duties included total responsibility for production, traffic and billing, and sales and marketing, *see* Pl's Exhibit 2, 8: 40:8-11; whereas Mr. Bracken[8] did not have those responsibilities. *See id.* Plaintiff, therefore, fails

---

[5] Plaintiff makes this allegation against the other two alleged similarly situated employees. To avoid repetition, the Court will not readdress this argument, as it is not well taken against any of the alleged similarly situated employees.

[6] Deposition testimony is confusing regarding Mr. Bracken's title when he replaced Mr. Kennedy. By the very act of replacement, the title should be Area Sales Manager, and that is how Mr. Bracken referred to that position. *See* Df's Exhibit J, 9:12-13. Yet, the briefs and other deposition testimony refer to the position as GSM. *See* Pl's Response at 20; Pl's Exhibit 2, 8, 39:17-25; Df's Memo at 18. The Court will assume that Mr. Bracken's title was Area Sales Manager, as each side concurs that he took over Mr. Kennedy's former position.

[7] Plaintiff never asserts that he attempted to obtain, or asked for, another position within the company. Mr. Mattsson, however, stated in his deposition that upon Plaintiff's inquiry at the exit interview, he offered Plaintiff a local account executive position, which Plaintiff refused. *See* Pl's Exhibit 2, 1:90:2-18.

[8] Mr. Wilhelm, as GSM, also did not have Plaintiff's responsibilities.

to form any nexus between Mr. Bracken's transfer to Colorado after his abysmal performance in Santa Fe and Plaintiff's alleged wrongful termination.

Paul Wilhelm

At the time of Plaintiff's termination, Derek Mattsson supervised both Paul Wilhelm and Plaintiff. *See* Pl's Response at 22. Throughout his tenure at TCI, Mr. Wilhelm held various positions in two states including Area Sales Manager and Senior Account Executive until he was fired due to alleged poor performance. *See* Df's Exhibit I, 10:22-25. Because of the confusing nature of the deposition testimony and the briefs, it is difficult for the Court to determine exactly when Mr. Wilhelm held these positions. Yet, Defendant demonstrates that Mr. Wilhelm was an Account Executive when TCI terminated Plaintiff. *See* Df's Exhibit I, 17:15-25; Df's Memo at 17. Moreover, Plaintiff does not contradict Defendant's statements that he and Mr. Wilhelm have different backgrounds and work histories.

Plaintiff also alleges that TCI treated Mr. Wilhelm differently than he because, instead of immediately firing him, the company demoted him from Area Sales Manager to Senior Account Executive. Yet, there is nothing in the record specifically indicating any reasons for this demotion.[9] The Court, thus, cannot conclude that Mr. Wilhelm's situation when he was transferred was similar to Plaintiff's when TCI fired him.

Plaintiff, therefore, fails to establish that there were similarly situated employees who violated rules of comparable seriousness. In this case, Plaintiff simply demonstrates that several employees, whose performances were not always satisfactory, were not immediately fired. Yet, in so showing,

---

[9]The only thing the record indicates is that there is a question regarding how Mr. Wilhelm obtained the Senior Account Executive position. *See* Df's Exhibit I, 20:9-12. An EEOC letter states that he applied for it, yet Mr. Wilhelm testified that he never applied but was ordered into the position by Mr. Christiansen. *See id.* at 9-17.

Plaintiff fails to account for nondiscriminatory reasons for the differential treatment. *See Furr*, 82 F.3d at 987 (internal citations omitted). Moreover, the record indicates that, unlike the other employees who sought other positions, Plaintiff only made such an inquiry at his exit interview, yet rejected the proffered demotion. Plaintiff's claim of discriminatory treatment, thus, cannot withstand the motion for summary judgment, for he does not demonstrate that Defendant's reasons for his termination were pretextual. Furthermore, Plaintiff wholly fails to show pretext in any manner, for "[t]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is genuine...." *See Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

## IV.  Conclusion

In order for a plaintiff to demonstrate that his employer discriminated against him he must successfully overcome the burden shifting analysis as set forth in *McDonnell-Douglas*. In this case, the Court assumed, without deciding, that Plaintiff established his *prima facia* case. The burden then shifted to Defendant to articulate a legitimate, nondiscriminatory reason for its termination of Defendant. Because this element is one of production and not persuasion, Defendant easily met its burden. Here, Defendant procured, among other things, deposition testimony of Plaintiff's direct supervisor and others who were in the position to evaluate Plaintiff. This testimony articulated that Plaintiff's performance, competence and leadership were inadequate.

Next, Plaintiff had to show that Defendant's reasoning was pretextual. To prove pretext, Plaintiff attempted to show: (1) that Defendant falsified its records to make Plaintiff's performance look worse than it truly was; (2) that Defendant acted contrary to written company policy, and (3) that Defendant acted contrary to unwritten company policy and practice. Plaintiff's brief, though filed

with citations to deposition testimony, fails to demonstrate that Defendant fired him for reasons beyond inadequate job performance. Arguing that Defendant treated him differently than purported similarly situated employees will not get him over the summary judgment hurdle unless he provides evidence that such claimed differential treatment was mired in discriminatory intent. This he fails to do. Defendant's motion for summary judgment is, therefore, granted.

Wherefore,

**IT IS SO ORDERED** that Defendant's Motion for Summary Judgment, filed October 19, 2001, (*Doc. 70)* is **GRANTED**.

Dated February 21, 2002.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
    Roger E. Yarbro, Esq.
    Yarbro & Assoc.
    Cloudcroft, New Mexico

Attorneys for Defendant:
    Russell W. Schell, Esq.
    Daena Goldsmith Ramsey Esq.
    Joyce M. Ondich Esq.
    Schell, Quillin, Mitchell, & Cooley, L.L.P.
    Dallas, Texas